UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| BRYANT E. DAVIS, <br> aka BRYANT DAVIDSON, <br> Plaintiff, | * <br> * <br> * |
| v. | *     Civil Action No. PJM-23-0078 |
| DARIUS HORTON, *et al.*, | * |
| Defendants. | * <br> *** |

## MEMORANDUM OPINION

Bryant E. Davis, aka Bryant Davidson, incarcerated at Jessup Correctional (JCI), has filed the above-referenced Complaint, alleging intentional infliction of emotional distress as well as deprivation of constitutional rights arising from his inability to arrange for the burial of his wife, Valerie Burke. ECF No. 1. Davis brings this action against Defendants Department of Public Safety and Correctional Services ("DPSCS"), Robert Dean, Shanea Ross, Olan Owolabi, Takor Oben (collectively "Correctional Defendants"), Express Funeral Funding, LLC ("Express Funding"), Darius Horton, Hartford Life and Accident Insurance Company ("Hartford"), and Fidelity Workplace Services, LLC d/b/a/ Fidelity Investment Company ("Fidelity").[1]

Defendants Express Funding, Darius Horton, Hartford, and Fidelity, each filed a Motion to Dismiss for Failure to State a Claim. ECF Nos. 35, 41, 59, 67. Correctional Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 52. Davis was notified of the motions and his opportunity to respond. ECF Nos. 37, 42, 53, 63, 68. Davis filed opposition

---

[1] The Clerk shall amend the docket to reflect the full and proper names of Defendants.

responses. ECF Nos. 43, 65.[2] Correctional Defendants filed a reply to Davis's response. ECF No. 66.

The Court has reviewed the pleadings and will resolve the motions without a hearing. Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Express Funding, Darius Horton, Hartford, and Fidelity's Motions to Dismiss (ECF Nos. 35, 41, 59, 67) are granted. Correctional Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, (ECF No. 52), is also granted. Davis's Motion for Injunctive Relief (ECF No. 16) is denied.

## I. BACKGROUND

### A. Plaintiff's allegations

Davis states that on November 10, 2022, his wife, Valerie Burke, who was employed by General Dynamics, died while working from home. ECF No. 1 at 2. Davis's brother in law, Christopher Burke, other unidentified individuals, and Funeral Director Darius Horton contacted JCI on an unspecified date, so that Davis could be advised of Ms. Burke's death and so that he could arrange the funeral since he was the beneficiary of her employer-issued life insurance policy. *Id.* at 2-3.

---

[2] To the extent Davis asserts new claims in his responses in opposition, such as mail tampering, denial of ability to file grievances, denial of access to courts, tampering with his ability to send messages through his tablet, retaliation, improper denial of ability to add names to his call list, interference with reception of television programming and use of his tablet, assault by correctional staff, denial of medical and psychological care (ECF No. 43, 55, 56, 65), those claims are not properly before the Court and will not be considered. Briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims. *See Zachair Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Laboratories, Inc. v. Akzo, N. V.*, 770 F.Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993). Additionally, to the extent Davis's filings include requests for appointment of counsel and to subpoena evidence, those requests are denied. The requests for appointment of counsel are denied for the reasons previously articulated by the Court (*see* ECF No. 17). Davis has again failed to demonstrate extraordinary circumstances warranting the appointment of counsel. His requests for subpoena appear to concern his claim that unnamed correctional staff have tampered with his tablet. As those claims are not properly before the Court, he is not entitled to subpoena the requested information.

Davis alleges that DPSCS and JCI did not tell him of Ms. Burke's death "until November 28, 2022 to November 30, 2022." ECF No. 1 at 3. He contends that this delay was done "deliberately and maliciously." *Id.* At the relevant time JCI did not have a chaplain to advise inmates of deaths, and Davis was on disciplinary segregation which included the loss of telephone privileges from October 25, 2022 to November 23, 2022. *Id.* Officers Owalobi and Oben allegedly denied Davis the use of the telephone after his telephone suspension expired—this caused the burial of his wife to be delayed until December 15, 2022. *Id.* Davis states that his telephone suspension was extended until December 23, 2022, the date his segregation term of confinement ended, rather than November 23, 2022, the date the Hearing Officer imposed for the telephone suspension to end. *Id.* at 4.

When Davis asked why he was not allowed to use the telephone, Lt. Owalabi responded, "Sgt. Lane". ECF No. 1 at 4. Davis explains that Sgt. Lane and another officer forged documents against Davis in another matter. *Id.* Defendants Owalabi, Oben, Ross, and Dean are "friends" of the officers that forged documents against him. *Id.* In his view, Lt. Owalabi's response "was to say this was pay back for my complaints against him and the discovery of his fraud." *Id.* at 5.

Relative to his telephone use, in a "supplement" filed by Davis, he states that he used a "prison cell phone" to contact an attorney, and that". . . prior to this the Plaintiff has been allowed to use the phone only dealing with a bereavement call because of a [sic] death of the plaintiff's wife." ECF No. 29 at 6. Additionally, in his response to Horton's dispositive motion, Davis states:

> Both Mr. Darius Horton and a representative of defendants [Express Funeral Funding] told the plaintiff in front of a Captain Jenkins, Secretary of Assistant Warden Ms. Peels and on a recorded line with the Hartford insurance company that by [Plaintiff] making this call to the insurance company to give verbal authorization to the insurance company to release the payment to the Express Funeral Funding company the plaintiff wife would be buried. . .

3

ECF No. 43 at 1. Davis also provides a statement written by his brother in law, Mr. Burke, which states that Mr. Burke and Mr. Horton "got in contact with [Davis] and . . .were on a three-way and [Davis] told me and Mr. Horton that he would make sure to take care of the funeral services. . . ." *Id.* at 3.

Davis also complains about the processing of the paperwork to issue his wife's life insurance proceeds and have her buried. He explains that his brother-in-law drove three-and-a-half hours to visit Davis to have Davis sign a claim form that had already been faxed to Chief of Security Ross. ECF No. 1 at 3. Apparently, Mr. Burke "was denied the right to get these notarized documents that [were] originally faxed from Funeral Director Darius Horton" to the Chief of Security. *Id.* at 3-4. Every time Horton faxed documents for Davis to sign, he either did not receive the documents or there was a delay in his receipt of the documents. *Id.* at 4.

Davis alleges that Darius Horton, Director of Horton's Funeral and Cremations "caused deliberate emotional distress" when he began the funeral arrangements without talking to Davis or his brother-in-law and before getting a loan from Express Funeral Funding. ECF No. 1 at 5. Davis contends that he was the only person who could authorize arrangements for his wife's burial and that Horton's securing a loan without Davis's authorization and knowledge was improper. *Id.* Additionally, Davis claims that Horton would not begin the funeral process until Hartford paid the insurance claim. *Id.* In Davis's view this "is illegal extortion". *Id.* Davis also claims that Horton was not authorized to add an 18% "tax" on the loan. *Id.*

Additionally, Davis states that he signed an affidavit, notarized by the Warden and Assistant Warden, which was sent to Horton stating that Davis was a layman and lacked the understanding of the "Irrevocable Assignment and Power of Attorney and Express Request Forms" that had been sent to him. ECF No. 1 at 6. Davis states that he wrote on the assignment that it was

4

only to be used to pay for funeral and burial arrangements. *Id.* As such, Davis contends that "the contract[] [is] void and cannot be binding" because the agreement was not made knowingly, intelligently, and voluntarily because he is a laymen with no legal experience. *Id.*

Davis states that he was extorted because his wife's body was held in a freezer for over a month, and he was mentally, emotionally, and physically harmed because her soul was not at rest. ECF No. 1 at 7.

In Davis's view, Hartford and Fidelity are each liable because he requested they expedite the claim forms so that his wife could be buried but, because he was calling from prison, the claim forms were never sent. ECF No. 1 at 7. This conduct added to the "deliberate emotional distress." *Id.* Davis claims that the delay in burying his wife caused him "mental torture, agony and suffering caused extreme emotional distress". ECF No. 1 at 3.

### B. Defendants' responses[3]

1. Correctional Defendants

Correctional Defendants explain that when JCI is advised that a loved one of an inmate has died, that information is given to the captain on duty or shift supervisor (ECF No. 52-2) who then

---

[3] For clarity as to the events that transpired between the parties, the Court observes that Express Funding explains its role in the burial of Ms. Burke in its Memorandum in support of their Motion, which is not supported by an Affidavit or other documentary evidence, as follows:

> Defendant Express Funeral Funding, LLC operates by lending funeral homes money to cover funeral and/or burial costs, using applicable insurance policies as collateral. The funeral home provides an Assignment and Power of Attorney, that is signed by all beneficiaries, which allows the insurance company to pay Express Funeral Funding, LLC the amount the insurance company would have paid to the funeral home for the funeral expenses in exchange for an advancement of funds for the funeral expenses. In this case, Express Funeral Funding, LLC lent Horton's Funeral Home and Cremations Sixteen Thousand Nine Hundred Ninety-One Dollars and Seventy-Seven cents ($16,991.77) and in turn, Horton's Funeral Home and Cremations signed over their right to receive that payment from The Hartford Insurance Company. Plaintiff approved the payment by his signing the Irrevocable Assignment and Power of Attorney. Defendant, Express Funeral Funding, LLC

fills out the "Incarcerated Individual Emergency Notification of Family Member Illness, Injury or Death" form, documenting the name of the inmate, the name of the decedent, their relationship to the inmate, and the date and time the notice was received. *Id.* at ¶ 5. If a chaplain is on staff, the form is given to the Chaplain who brings the inmate to their office and gives the information to the inmate. *Id.* The Chaplain also assists the inmate in contacting their family or other relevant person. *Id.* When there is no Chaplain available, the captain or supervisor who received the notice is responsible for notifying the inmate directly and the inmate is allowed to call family or relevant interested person from the captain's office. *Id.* The captain or shift supervisor also sends an email to prison administrators and staff advising them of the inmate's loss and that the inmate has been notified. *Id.*

Defendant Horton called JCI and spoke with Defendant Olowe on November 28, 2022, advising of Ms. Burke's death. ECF No. 52-2 at ¶ 6; ECF No. 52-3 at 1, 5. Olowe avers that to his knowledge this was the first notice of Ms. Burke's death received by JCI staff. ECF No. 52-2 at ¶ 9. Olowe documented the information provided and arranged for Davis to be informed of Ms. Burke's death. ECF No. 52-2 at ¶ 6; ECF No. 52-3 at 5. Davis was allowed a call and spoke with

---

> does not have any business dealings within the State of Maryland – the only connection is that Plaintiff signed an Irrevocable Assignment and Power of Attorney authorizing Defendant Express Funeral Funding, LLC to receive funds from The Hartford.... The 18% [tax erroneously referenced by Plaintiff] refers to interest on the loan, if the loan is not paid in full within 90 days the interest would be paid by the funeral home or cemetery (not Plaintiff or any other would-be beneficiary), not relating to any party in Maryland, any such payment would not be imposed in Maryland, and any such payment would not be made in Maryland, the terms of such payment would not be made pursuant to the laws of the State of Maryland. At no point was that interest rate imposed concerning the burial of Valerie Burke – as Defendant Express Funeral Funding, LLC received timely reimbursement.

ECF No. 35-1 at 4.

Mr. Horton. ECF No. 52-2 at ¶ 7. Olowe directed officers to monitor Davis. ECF No. 52-2 at ¶ 8; ECF No. 52-3 at 1. He also sent an email to JCI administrators and staff informing them of Ms. Burke's death and that Davis had been notified and attached the Incarcerated Individuals Emergency Notification form to the email. ECF No. 52-2 at ¶ 8; ECF No. 52-3 at 1.

JCI inmate telephone records demonstrate that Davis made at least fourteen telephone calls between November 28, 2022, when he learned of Ms. Burke's death, and December 15, 2022 when he states Ms. Burke was buried. ECF No. 52-4; ECF No. 52-5.

On October 25, 2022, Davis was transferred from his cell in Building F at JCI to a cell in Building B at JCI. ECF No. 52-6. At the time of the filing of Correctional Defendants' dispositive motion, Davis had not returned to Building F. *Id.*; ECF No. 52-8 at ¶ 2.

Defendant Oben is permanently assigned to Building F and has not worked in any other building at JCI from October 25, 2022 to November 27, 2023. ECF No. 52-7 at ¶ 2. Oben does not recall having any direct, personal interaction with Davis since October 25, 2022. ECF No. 61-1 at, ¶ 6. Oben further explains that after Davis's transfer on October 25, 2022, there were occasions where he visited other housing units as part of his duties, and Davis may have seen him in the unit where Davis was assigned. *Id.*, ¶ 7. The decision, after October 25, 2022, whether Davis was permitted to use the telephone, however, would not have come from Oben, but from an officer/supervisor assigned to Davis's unit. *Id.* After Davis left Oben's unit on October 25, 2022, Oben does not recall having any reason to decide whether Davis could use a telephone. *Id.*, ¶ 8.

Inmates are permitted to make telephone calls subject to certain restrictions which include an inmate's housing status, telephone time limits, and times of day when calls are permitted. ECF No. 52-8 at ¶ 5. While Davis was under Lt. Owolabi's supervision, Owolabi avers that he never denied Davis the opportunity to use the telephone for any non-policy reason. *Id.* at ¶ 6.

7

2. Hartford

On November 28, 2022, Davis signed an Irrevocable Assignment and Power of Attorney which assigned $16,991.77 of life insurance proceeds for any policy issued by Hartford to Hortons Funeral Home and Cremations. ECF No. 1 at 3, 5. On December 1, 2022, Express Funding faxed the signed Irrevocable Assignment and Power of Attorney to Hartford. ECF No. 60-1 at 40. Between December 5 and 7, 2022 Hartford contacted Express Funding explaining that it had "not rec[eive]d claim submission from" the decedent's employer and that it could not "proceed or validate claim until claim rec[eive]d." ECF No. 60-1 at 12. Additionally, Hartford noted that the form was "signed by friend" but the name could not be read. *Id.*

Davis called Hartford on December 12, 2022, and asked for a fax number where he could send in the claim form that the funeral home had sent to him. ECF No. 60-1 at 11. Hartford was also provided a copy of Ms. Burke's death certificate. *Id.*

The following day, Hartford advised the decedent's employer that it had "been notified by a funeral home that [Ms. Burke] has died. Let us know if you will be submitting a life claim." ECF No. 60-1 at 11. The employer responded promptly and advised that the "claim will be submitted in the next 5-6 business days." Hartford received the claim information on December 19, 2022. ECF No. 60-1 at 10, 19-23.

On December 20, 2022, Hartford reviewed the information it received from the funeral home and Ms. Burke's employer and noted that it was "unable to read the address" on the beneficiary statement. Hartford contacted the funeral home to determine the address. ECF No. 60-1 at 8. Mr. Burke called Hartford on January 4, 2023, and advised that Davis was incarcerated under the name Bryant Davidson and provided his address. *Id.* at 6. The next day Hartford called Mr. Burke to confirm Davis's address. *Id.* at 5.

On January 6, 2023, Hartford disbursed payment to Davis and advised Ms. Burke's employer of same. ECF No. 6-1 at 4, 5. An employee of DPSCS contacted Hartford on January 17, 2023 to confirm the identity of the person to whom the payment was directed. She confirmed that the payment was intended for inmate Bryant Davison (not Davidson as Mr. Burke reported). *Id*. at 4; *see also* ECF No. 1 at 7. The next day, Hartford confirmed to DPSCS that it "mailed a check to Bryant Davis which is the name listed on the beneficiary designation as well as the completed claim form." ECF No. 6-1 at 3.

Davis called Hartford on January 24, 2023. ECF No. 6-1 at 3. He was advised that the check was mailed to him at the address provided by Mr. Burke. During another call Davis reported that Mr. Burke had provided the wrong zip code and the check should be stopped. *Id*. After several telephone calls during which Davis stated that he had not received the check, Hartford confirmed the check was sent to the address provided by Mr. Burke, and DPSCS confirmed receipt of the check, on January 25, 2023, Davis advised that "the c[hec]k was received and no stop reissue was needed." *Id*. at 1.

## II. STANDARDS OF REVIEW

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Legal conclusions or conclusory statements do not suffice. *Id*. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

9

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Davis was placed on notice that Correctional Defendants sought summary judgment and responded in opposition. ECF No. 53, 55. Accordingly, the Court treats that motion as one for summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine"

10

if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### III. DISCUSSION

#### A. Personal Jurisdiction

In his Motion, Defendant Horton argues, among other things, that the claims against him should be dismissed for lack of personal jurisdiction. Under Rule 12(b)(2), the plaintiff has the burden to establish personal jurisdiction. *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that the defendant is properly subject to this Court's jurisdiction. *Id.* at 60. In evaluating the plaintiff's showing, the Court must accept the plaintiff's allegations as true and must resolve any factual conflicts in the plaintiff's favor. *Id.*

For a district court to assert personal jurisdiction over a non-resident defendant, the exercise of jurisdiction: (1) "must be authorized under the state's long-arm statute"; and (2) "must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because courts have interpreted the Maryland long-arm statute to reach as far as the Constitution allows, the statutory and due process components of the personal jurisdiction analysis merge. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

A court may exert personal jurisdiction over a non-resident defendant in keeping with due process if the defendant has "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts distinguish between two types of personal jurisdiction: general and

11

specific. A court has general personal jurisdiction over out-of-state defendants whose "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). A court has specific personal jurisdiction when the defendant has "purposefully established minimum contacts in the forum State such that [it] should reasonably anticipate being hailed into court there." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In assessing whether specific jurisdiction exists, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* (quoting *ALS Scan, Inc.*, 293 F.3d at 712). A plaintiff must prevail on each prong. *Id.*

Here general jurisdiction does not exist because Horton is a citizen of Georgia, operating a funeral home in Georgia.

As for specific jurisdiction, it is undisputed that Horton's only contact with Davis was discussing the funeral arrangements for Ms. Burke. Davis signed an assignment of a life insurance policy which permitted the funding of Ms. Burke's funeral. There is no claim that Mr. Horton ever traveled to Maryland to conduct business with Mr. Davis. Additionally, it is unclear who actually entered into a contract with Mr. Horton for funeral services, as Davis alleges that it was Mr. Burke who contacted Horton and arranged Ms. Burke's funeral. When a defendant has no physical presence in the forum state, specific jurisdiction requires that the defendant engaged in purposeful availment "of the privilege of conducting activities in the State." *Perdue Foods LLC*, 814 F.3d at

189. Among the factors considered when assessing whether the purposeful availment requirement is met are:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018)). Here, Mr. Horton had no offices or agents in Maryland and did not operate a funeral home or otherwise engage in business activities in Maryland, and he had no property in Maryland. There is no allegation or evidence that Mr. Horton engaged in any solicitation or recruitment of clients from Maryland. There are no agreements or contracts requiring that Mr. Horton provide any services in Maryland. In the absence of any of these indicia of purposeful availment, and where Mr. Horton was conducting his business only in Georgia, there is no basis to conclude that he could have reasonably anticipated that he would be hailed into this Court.

Accordingly, the Court finds that it lacks personal jurisdiction over Mr. Horton and will grant Mr. Horton's Motion to Dismiss. The Court therefore need not address Mr. Horton's additional arguments.

**B. Civil Rights Claim**

    1. State action

At its core, a civil rights action under 42 U.S.C. § 1983 is directed to unlawful conduct under color of law. *See Owens v. Baltimore City State's Attorney Office*, 767 F.3d 379 (4th Cir.

2014) *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015). Section 1983 of 42 U.S.C. provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*See Smith v. Montgomery Cty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983").

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, deprives her "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

"The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245. To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019).

14

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action. Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *See Iqbal*, 556 U.S. at 676; *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

The complaint does not state a federal claim as to Defendants Horton, Funeral Funding, Fidelity, or Harford. In order to sustain an action under § 1983, a plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West*, 487 U.S. at 48. Defendants Horton, Funeral Funding,

Fidelity and Hartford are either private citizens or private corporations and there is no allegation that any of these named Defendants were acting "under color of law" in their dealings with Davis. Therefore, Defendants Horton, Funeral Funding, Fidelity, and Hartford are not amenable to suit under §1983. That Horton, Express Funding, Fidelity, and Hartford may have mailed or faxed documents to a state correctional facility does not make them joint actors with agents of the state.[4] Accordingly, any federal civil rights claims asserted against Horton, Funeral Funding, Fidelity, and Hartford are dismissed.

2. Correctional Defendants

i. Eleventh Amendment

Davis's claims asserted against DPSCS and against Robert Dean, Shanea Ross, Olan Owolabi, and Takor Oben in their official capacities are barred by Eleventh Amendment immunity. Under the Eleventh Amendment to the Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state absent the state's consent to suit. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Claims against state officials in their

---

[4] Even reading Davis's Complaint liberally, he has failed to state a claim that Horton, Funeral Funding, Fidelity and/or Hartford conspired with Correctional Defendants to violate his rights. A conclusory allegation of a conspiracy is insufficient to state a claim. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2nd Cir. 1997); *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) ("Allegations of conspiracy . . . must be pled with sufficient specificity and factual support to suggest a meeting of the minds.") (quotation omitted). Davis has provided no factual support for the Court to reasonably infer that Horton, Funeral Funding, Fidelity, or Hartford conspired with Correctional Defendants to deprive him of any right or privilege under the color of state law. Nor has he alleged facts that would justify imposing § 1983 liability onto these otherwise private actors under the state-action doctrine recognized by cases like *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999) and *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993).

official capacities are claims against the State itself. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, Davis's claims against DPSCS and the individually named Correctional Defendants in their official capacities are barred by the Eleventh Amendment and will be dismissed.

    ii.  Use of Telephone

In order for Davis to prevail on his claim regarding the alleged denial of telephone calls, he must establish that Correctional Defendants' conduct somehow infringed on a constitutionally protected right and has caused him an injury. *See White v. White*, 886 F.2d 721, 723-24 (4th Cir. 1989) (holding that it was proper for district court to dismiss a prisoner's claim that contained no allegation of specific injury related to a delay in legal mail). Davis has failed to identify any constitutional right that was allegedly violated by denying him access to a telephone.

In any event, Davis's allegations against Defendants Ross and Dean, who were apparently supervisory officials within the correctional facility, must be dismissed. Liability under § 1983 must be based on the defendant's personal conduct, because there is no vicarious liability or *respondeat superior* liability for § 1983 claims. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). To hold a defendant liable as a supervisor, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Here, Davis has not alleged facts

17

or identified evidence showing that Ross or Dean took any action regarding his use of the telephone.

Further, Defendant Oben is entitled to summary judgment because the uncontroverted record evidence demonstrates that after Davis's transfer from Building F to Builting B, Oben had no authority over Davis's use of the telephone.

Finally, Correctional Defendants are entitled to summary judgment because the undisputed record shows that Davis's use of the telephone was not impermissibly restricted. Davis's telephone records show that even when he was on segregation and his telephone privileges were suspended, he was permitted to make telephone calls regarding the passing of Ms. Burke. Thereafter, the uncontradicted record demonstrates that he made 14 telephone calls between the date of his release from disciplinary segregation and the date Ms. Burke was buried. Moreover, Davis's own filings indicate that in addition to Davis's use of the telephones made available for inmates, he was also permitted, with the assistance of correctional staff, to make telephone calls to facilitate the processing of the life insurance claim and burial of Ms. Burke. As such, Correctional Defendants are entitled to summary judgment as to Davis's constitutional claims.

### C.      Intentional Infliction of Emotional Distress

"When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966). Nevertheless, the Court considers Davis's state law claim of intentional infliction of emotional distress ("IIED") and finds it lacking as to all Defendants.

In order to state a claim for IIED, Davis must plead and provide supporting facts that: (1) the conduct is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *Williams v. Wicomico County Board of Education*, 836 F. Supp. 2d 387, 398 (citing *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (1989)).

Under Maryland law, a successful claim of IIED requires a plaintiff to establish four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) the conduct must be causally related to the emotional distress; and (4) the emotional distress must be severe. *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). The conduct alleged in the complaint consists of the refusal to allow Davis access to a telephone over a matter of weeks and the failure to process forms.

The Appellate Court of Maryland has indicated that the conduct for this tort must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 380 A.2d at 614. Pleading a claim for intentional infliction of emotional distress is a rigorous and difficult burden to satisfy. *Ky. Fried Chicken Nat'l Mgmt. v. Weathersby*, 326 Md. 663, 670 (1992). Recovery is limited to the most extreme and unusual circumstances. *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 614 A.2d 1021, 1034 (Md. App. 2010).

Based on the nature and severity of conduct Davis alleges, the Court cannot conclude that he has stated a plausible claim for IIED as such this portion of his complaint is also dismissed as to all Defendants.[5]

---

[5] Hartford and Fidelity additionally argue that Davis's claim against them for IIED is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1001 *et seq.* The Court agrees. Davis's claim against Hartford and Fidelity derives from their alleged

**D.     Injunctive Relief**

Davis also seeks injunctive relief. A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Failure to establish one of these elements is fatal to the request for injunctive relief. For the reasons discussed *supra*, Davis has failed to establish the likelihood of success on the merits, and for this reason alone, the request for injunctive relief is denied.

## IV.     CONCLUSION

For the foregoing reasons, Defendants Express Funding, Darius Horton, Hartford, and Fidelity's Motions to Dismiss (ECF Nos. 35, 41, 59, 67) **ARE GRANTED**. Correctional Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 52) **IS GRANTED**. Davis's Motion for Injunctive Relief (ECF No. 16) **IS DENIED**. A separate Order follows.

2/26/24
Date

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

mishandling of his claim for his wife's life insurance policy, which is a policy covered by ERISA. *See Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 446 (4th Cir. 1993). As such, this state law tort claim "relates" to the administration of the policy, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987), and is therefore preempted by ERISA's exclusive mechanism for the enforcement of rights under a benefits plan. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145–48 (1985). Accordingly, Davis's Complaint would fail to state a claim for IIED against Hartford and Fidelity on that basis as well.